Our second case for argument this morning is Kitterman v. Belleville NANCY CRUZ My name is Nancy Cruz and I am pro bono counsel appointed by this court to represent Appellant Mr. Shane Kitterman. In addition to addressing any follow up questions this court may have on the questions presented in its order dated October 20, 2021, I would like to use my time today to first discuss the appropriate standard under which Mr. Kitterman's First Amendment Retaliation Claim should be analyzed, and second, to address the District Court's erroneous decision to dismiss Mr. Kitterman's complaint. First, Mr. Kitterman's First Amendment Retaliation Claim should be analyzed under the Mount Healthy Standard and not the Neves v. Bartlett Standard for one important reason. Officer Collins' actions were an attempt to compel Mr. Kitterman to affirmatively act when Mr. Kitterman was no longer under a duty to register. So can I unpack that a little bit, because whether he was under a duty to register is a pivotal part of your argument. And I have been scratching my head trying to think of a situation in which a private party, you know, an individual in 1996 could sign some agreement that said, I'm never going to be subject to the law of Illinois again. And I understand that, you know, when he was first charged with the sex offense, Csora and Sora were in the process of changing from one to the other. Csora was phasing out, Sora was coming in. But Mr. Kitterman seems to read this as though in all perpetuity, no matter what Illinois says, he's out. And I can't think of a situation where that would be the case. Particularly, I will say, if we, I know there are more aspects to this, but if we follow the Supreme Court's guidance and we say that these registration requirements are we say if it's non-punitive, there's no ex post facto problem. Yes, Your Honor. Well, with regard to Mr. Kitterman's specific circumstances, he is not arguing that in the event that he were to commit or at least be charged with another, an additional separate sex offense, that he would not be subject to these requirements. But the new law in 2012 didn't limit it. I mean, maybe it was a draconian law. I'm not here to defend the law, but the law passed in 2012 by Illinois said if you commit any other felony, we're going to put you under lifetime registration obligations. And he did. And maybe it wasn't the worst felony ever, but it was a felony. And he thereby brought himself under this new law that wasn't even in existence in 96. But that law, Your Honor, the applicability of that law ties back to his original conviction. It ties back to the fact that he pled guilty. And under that initial plea, he was promised, at least based on the allegations in his complaint, which at this stage in the proceeding should be taken as true, that he would, he was promised that he would not be subject to further registration requirements in the future beyond the CSORA, the requirements in CSORA. At this point, as the record... What does it actually say? I mean, I've looked for the language of that 1996 undertaking. I don't see anything quite as crisp as what you're asserting. That he was promised he wouldn't be subject... Yeah, like in all perpetuity, no matter how often the state... Right. Any language saying, and Mr. Kitterman is immune from any new or amended statutes of the state of Illinois, period. Yes, Your Honor. Well, the conditions of probation explicitly indicated that he was subject to CSORA, as the record demonstrates at 8-129. Now, at this stage in the proceeding, again, Mr. Kitterman alleges that that's what he was promised. Now, he's not required to... Lawyers tend to use the phrase ultra viris for such a promise. How could the executive branch of Illinois promise that the legislative branch of Illinois would never do anything to Kitterman's detriment? How do they have the authority to make such a promise? Put to one side the question, whether they made it, where does that authority come from? That's a great question, Your Honor. I think at issue, though... Mr. Kitterman... All right. I don't think there's an answer to that question. As a matter of Illinois law, they don't have any such authority. But this leads to the burden of my principal question in this case, which is, why are we here? I know the answer to that. Mr. Kitterman filed a lawsuit. That's why we're here. But why are we, a federal court, trying to answer the question, what are Kitterman's entitlements under Illinois law? It certainly isn't true that every violation of Illinois law violates the Constitution. One would think that the way to resolve this is to bring a declaratory judgment action in state court or get arrested and make, as a defense in state court, a reliance on the 1996 plea agreement. But of course, your argument is, as a matter of federal law, that he can never be arrested. And therefore, the normal way of resolving a dispute about the meaning of state criminal law can never happen. Is that really what federal law says? That federal law makes it impossible to go through the normal way of resolving a dispute about the meaning of state criminal law? We're not saying that he can never be arrested, Your Honor. The reason this is... Yes, you are. The reason this is a question brought in federal court is specifically for, well, first, the First you mean the statement, if you don't register, I'm going to arrest you. And of course, the arrest will then kick off the process of determining the meaning of state law and the 1996 plea agreement. So you are saying that the federal Constitution prevents, absolutely forecloses, the normal means of resolving questions about liability under state law. And I have some difficulty seeing how that can be so. Well, Your Honor, Mr. Kitterman has... The state of Illinois did overturn his conviction. So we have tried to address... They overturned his convictions on grounds other than the merits. They overturned them for failure of evidence. If they had overturned them on the merits, we wouldn't be here fighting because he to pin this question down. And you see my problem. You're saying that the federal Constitution prevents that from ever happening. What we're saying, Your Honor, is that the federal Constitution prevents government defendants from... There is more than just a threat to arrest in this case. And that's the point we're trying to make, Your Honor. Defendant Collins attempted to compel Mr. Kitterman to register despite the fact that he hadn't had these overturned convictions. Okay. Can I... One of the questions that was asked specifically, which I didn't find the answer to in your brief, is did the defendants try to compel him in any way other than saying, you must register or we'll arrest you? They did, Your Honor. And that was in our brief... Did they beat him? That's not the only way to compel a person to act, Your Honor. In fact, in Backpage.com LLC v. Dart, this court held that what matters in the First Amendment context is... Look, I'm asking a question about what happened to Kitterman, not what happened in some other case. Okay. Defendant Collins harassed Mr. Kitterman. He, as we did explain in our briefing... Yeah. Look, I hope you see my problem with it. The harassment is going to him and saying, unless you register, I'll arrest you. That wasn't the only harassment. You're talking about his wife and going into there and harassing his family. Yes, Your Honor. Can I maybe get what Judge Easterbrook is asking in a somewhat different way? The record shows that Mr. Kitterman has been trying to get some kind of adjudication of his obligation to register with these 230 some odd petitions for an administrative hearing and other things. So I want to know, is it your position that we're here in federal court because the state courts have simply closed their doors to him? Not necessarily, Your Honor. We're here because after he had his day in state court, it was clear from the actions of defendants that they weren't going to proceed. They were going to continue pursuing Mr. Kitterman. Because they didn't read the Illinois Appellate Court's decision as broadly as Mr. Kitterman does. Sure. However, that doesn't justify the actions of defendant Collins to continue harassing Mr. Kitterman. Did he ever file a declaratory judgment action in state court? Not that we're aware of, Your Honor. However, it doesn't justify the actions, even though Mr. Kitterman was not, to Judge Easterbrook's point, beaten or had some extreme version of what we could define as harassment, the harassment did exist. And Mr. Kitterman preemptively filed a complaint and then filed a subsequent complaint against the BPD to clarify whether or not he indeed had a duty to register. Complaints which were ignored and then as a result of those complaints, defendant Collins then acted in the form of harassment and intimidation to coerce Mr. Kitterman to register. That's why we're here. That's one of the reasons why we're here. And we are here because- But what doesn't that, I mean, I'm going to go to another of our questions in the order. If Officer Collins, in fact, had probable cause to detain Mr. Kitterman for the failure to register, doesn't everything fall apart under Neves? Under Neves, showing a probable cause does undermine- So that's why I started out with the position. That's why I think it's so pivotal that if Mr. Kitterman, in fact, was fully subject to the 2012, you know, to the later legislation, maybe I'm giving you the wrong year, but no, it's 2012 where the, you know, everything flows from there. Then Officer Collins has probable cause, then Neves applies, then Mr. Kitterman just is in the unfortunate position of somebody who's going to have to register for the rest of his life. But that completely ignores Mr. Kitterman's allegations that he was promised that he wouldn't, you know, and I think that's the question at issue here and what the district court disregarded. At the very least, we should analyze the question with that in mind, right? We shouldn't completely ignore it and perhaps, you know, and then eventually with additional evidence, once we, you know, Mr. Kitterman has the opportunity to proceed down the stage of pass the motion to dismiss, it can finally be determined whether or not he was indeed promised that and what the merit of that is. And if the panel has no further questions, I'd like to reserve the rest of my time for rebuttal. Certainly, Ms. Cruz. Thank you. Good morning, Your Honors. May it please the court. My name is Adam Horner. I'm here on behalf of Appellee's City of Belleville, Dan Collins, St. Clair County, Mike Martin, and Jennifer Edwards. I want to first begin discussing Mr. Kitterman's duty to register. As Judge Wood pointed out, it's pivotal to this case, whether or not he does have a duty to register. It is the appellant's contention that he is subject to the 1996, well, I suppose 1993 version of C-SORA that predates the 1996 amended SORA. And such agreement was memorialized in a plea agreement that he points to as an exhibit in his complaint, as exhibit two and three, neither of which are plea agreements. They are conditions of probation. Mr. Horner, let me ask you the same kind of question I was asking Ms. Cruz, which is, why are we here in federal court trying to resolve the meaning of state law? Both sides have briefed this case as if, if I'm right on state law, then the other side loses. But this claim purports to rest on the federal constitution, not on state law. Why aren't we trying to figure out a way for the state court to resolve state law issues and the federal court to resolve federal law issues, rather than saying, well, if they violated state law, then they violated the federal constitution or not? Yes, I agree. And I think, you say you agree, but that's not the line taken in your brief. Your brief tells us to resolve this case on state law grounds. I.e. that he has to register, right? Yes. So, yeah, I mean, let me ask you, I'm going to ask you a state law question though. So, under most of the registration acts that I'm familiar with, the duty to register is a statutory one, and it's not something that could either be added into or subtracted from conditions of release. We would call it in federal court supervised release, but whatever you want to call it. And it's my understanding that SORA itself is the following people have to register, and it doesn't leave it up to individual plea bargaining negotiation on a case by case basis. Is that correct? Yes. So, if there was, so there might have even been a state law problem with the 1996 agreement, not to mention, you know, everything else subsequent to it. Yes. But moving forward, with Mr. Kitterman's duty to register, it's their contention that he was subject to that CSORA, as you said, in perpetuity, Judge Wood, and that's just simply not the case. They contend that, and we agree, that plea agreements bargain for between the government and defendants are contracts. And with that, both sides have to keep it there into the bargain. Mr. Kitterman failed to do so. He was placed on, he had the intensive probationary conditions that he must meet. Those include meeting curfew, not indulging in drugs or alcohol, taking a sex offender class and a drug and alcohol abuse class. He did none of these things. And as a result, in 1997, his probation was revoked and he was sentenced to prison. So I think at that moment, any plea deal or agreement that CSORA would apply going forward ceased to exist. Did the state of Illinois ever go to state court and say our promises are no longer binding? No, they did not, but we don't have any records. I'm just bugged. I hope you could tell by my questions to Ms. Cruz. By the question how a prosecutor would have actual or even apparent authority to bargain away the state's rights. Suppose a federal prosecutor signs an agreement with a defendant that says it's true you're subject to a lifetime term of supervised release, but we promise that your supervised release will never be revoked, no matter what you do, thus defeating the supervised release statute. Would that promise be binding? I think it would depend on the statute. For example, in this Illinois case, depending on what conditions they meet, if that prosecutor were to say that you have a lifetime registration requirement that cannot be revoked. For example, in this instance, Mr. Kidman meets certain conditions that result in a lifetime registration that cannot be revoked. So I think in such instances, it could be binding. So you're talking about his later felony? Yes. The July 1st felony? Yes. So with his later felony, the retail theft, I think the language of CSORA is pretty clear in unambiguous in that if you were convicted of certain enumerated crimes before 1999 and convicted of a felony after July 1 of 2011, then you meet the conditions of a sexual predator. That's the definition under the statute, and Mr. Kidman, he pled guilty to— So he shoplifts, basically, and now he's a sexual predator? I mean, it's a crazy law. Yes, it is, but it is a law, and he meets the conditions of that law, and therefore, he's defined as a sexual predator, and CSORA requires a lifetime registration for sexual predators, and that's why he has a lifetime registration. We move forward to the First Amendment claims. As Judge Easterbrook mentioned, Mr. Kidman was never threatened with more than the possibility of arrest and to face prosecution. Has he ever been arrested for these? I mean, because I take it he's not, or at least during the time the events that led to this case were taking place, he wasn't registering, so has he been prosecuted by the state? Yes, and he had some convictions overturned. When you answer yes, are you referring to something other than the four convictions that were vacated? Yes, in 2005, he was convicted of failure to provide a change of address, and as such, he was sentenced to prison, and it was during that time that his duty to register tolled, and this is where Mr. Kidman believed that his duration to register ended on January 10th of 2006, but he was in prison in 2005 until his release in December of 2006. I'm sorry. Has he been prosecuted since 2018 when the appellate court set aside some of those earlier matters? I do not believe so. I don't think so, even though, because he's registering, or because he's in prison, or because, I mean, not that we would necessarily know that. I guess there would be a public record if he's been prosecuted. Yeah, I believe he is currently in prison. If I'm not mistaken, I'm not sure what charge that is. Okay. All right. Thank you, Mr. Horgan. Let me get this right this time. Ms. Yonig. Yes. May it please the court. Leigh Yonig on behalf of the state defendants. I'm going to address primarily here the claims other than the First Amendment claim, but before I do so, just to note two other points with respect to the state defendants and the First Amendment claim, which is that this court can affirm the dismissal of that claim with respect to the state defendants without reaching any of the nevus or whether he's required to register issues because, first, Mr. Kitterman forfeited that claim with respect to the state in his opening brief by only addressing the issues of Defendant Collins with respect to the First Amendment claim, and second, Kitterman does not allege any retaliatory action by the state in response to the actions of, excuse me, in response to Kitterman's complaints against Collins because the actions taken by the state, namely telling Mr. Kitterman he had to register, were going on for years before Kitterman made any complaints against Collins. With respect to the remaining claims, those claims against the state are barred by claim preclusion. Kitterman does not respond to this argument in his... I don't see how it's claim parties, and he's talking about events that long post-date earlier judicial proceedings. The defendants in the 2018 state court case, Kitterman v. Kelly that Kitterman brought after his convictions were vacated in 2018, named one of the same defendants as the state here, Defendant Newton, and bring that claim in response to her carrying out her duties as director of the Sex Offender Registration Unit. And so as a result, the other state defendant here is in privity because those interests are equally represented in both lawsuits. I understand that the facts are very similar, but he's complaining about later actions. That's not I mean, there have been final judgments on the merits, but the events are just later events. And so the Illinois courts use a transactional test for that sort of thing. You would look to the rendering jurisdiction. I don't see that claim preclusion is applicable here. Your Honor, it's applicable because it all flows from his contention that the state is incorrectly requiring him to register because of this plea agreement. But even if the court goes to the merits of the remaining claims, those claims still do not state a claim. First, with respect to the due process claim, this court's decision in Murphy states that an informal self-initiated process to correct potential errors on a sex offender registry is sufficient to satisfy the requirements of the due process clause. Now, in that case, the plaintiff took primarily the same actions that Kitterman took here. He reached out to, in that case, the Wisconsin Department that was administering their sex offender registry and said, hey, I don't think I should have to register. Wisconsin sent him a letter back saying, yes, you do, and here's why. And that's the same thing that happened here. And Kitterman alleges that in his complaint. He reached out to the state police, and they responded with a letter saying, here's why you have to register. And so as a result, the due process requirements are satisfied. Do you think he should have followed up in state court with the action for declaratory judgment that Judge Easterbrook keeps talking about? That is one possibility, Your Honor. He certainly didn't agree with what the state police said to him and repeatedly, repeatedly made that clear. Yes, Your Honor. To be clear, Mr. Kitterman would have had many remedies if he wanted to seek some sort of vindication of this nebulous plea agreement that he now alleges. Most probably. I mean, maybe you can structure this and answer my question about whether the doors to the state courts were, in fact, closed to him with all of these fruitless petitions that he keeps filing. They are not closed to him now because Kitterman could file a declaratory judgment action or perhaps a mandamus petition if he contends that the state has a legal duty to remove him from the registry. That's one option he asked him. But I think most prominently, Exhibit 3 to the complaint is a document that Kitterman signed in 1996, and it lists the conditions for sex offender registration that were the post-1996 amendments to SORA. So at that moment, if there was some sort of agreement, he was on notice that the agreement was being violated because the 1996 SORA was being applied to him, and he could have simply moved to withdraw his plea at that point. So that's like a right-at-the-root defense. So you don't think the state ever chose to follow the C-SORA even at the beginning? No, Your Honor. I don't believe that the state could, or the prosecutor, it's sort of unclear who could even make such an agreement. But the court need not reach that issue because as a factual matter, he doesn't sufficiently allege such an agreement is in his complaint. The exhibit, as we've explained, Exhibit 3, flatly contradicts such an agreement. Exhibit 2, which they rely heavily on, merely states the, it merely refers to the one-year condition of Mr. Kitterman's acknowledgement that he had to register for 10 years, even under his version of the facts. And there's nothing in that document that suggests any sort of agreement. And it also expressly says he must comply with registration as directed by his probation officer. So it's sort of implicitly incorporating that there's more to the registration requirement than what's in that the due process clause is satisfied, at least under Murphy. But moreover, Kitterman had many other avenues available to him to seek vindication of this supposed agreement. Then briefly with respect to the ex post facto and the Eighth Amendment claim, it's well established that the sex offender registration statutes in general are not punitive and Mr. Kitterman has not pursued that further on appeal. He relies solely on this agreement, but the- I mean, we all, we say that, but actually we're losing, we're lumping a lot of things together. When the Supreme Court originally said it wasn't punitive, it was as against the backdrop of the Alaska regime. Supervised release is punitive and a lot of these registration requirements at this point look an awful lot like supervised release, like a lot like supervised release. So I'm not sure that the quote, non-punitive characterization is good for all of us. That may be so, Your Honor, but Mr. Kitterman, A, has not pursued that issue on appeal, and B, he hasn't alleged any of the kind of, you know, residency restrictions or any of the sorts of things that may be implicated in that sort of question. He's only talking about he has to register and it's on a website. And that, in fact, was the same sort of facts presented in the Supreme Court's decision in Smith v. Doe, that that involved, you know, putting public information on a website, same as we have here. So that's not an issue that this Court need reach in this case. And so, therefore, we would ask the Court to affirm the judgment of the District Court. Thank you. Thank you, Counsel. Ms. Cruz, anything further? I'd like to clarify a couple of points. First, the 2005 conviction that was addressed by opposing counsel, Mr. Kitterman, when he pled guilty to that, to failure to register in 2005, the Court did confirm on the record that his registration requirements would not be extended beyond the original period. So regardless of the fact that they may have been told while he was in prison, the 10-year registration period was not to be extended as a result of that conviction. Second, I would like to address the point that he is currently in jail, not in prison, pending new and separate charges unrelated to the registration requirements. And third, the only way—going back to your question, Judge Easterbrook, about why we're here in federal court—the only way for the state courts to finally resolve the question as to whether Mr. Kitterman does in fact have a duty to register would be to subject him to potential imprisonment yet again. Or to file a declaratory judgment action. Yes, Your Honor. And he has been registering thus far in order to avoid being in prison. But again, given the implications under the First Amendment, we do think that this court is the proper place to resolve that. Finally, to address the claim preclusion arguments, as Judge Wood pointed out, while it is true that one of the underlying facts is the 1996 plea deal, the actions that Mr. Kitterman complains about did indeed come after. And for an extended period of time, he was in fact barred from bringing any claims under HUD. And thankfully, after the 2018 court vacated those convictions, he was able to bring those claims. And for those reasons, we think this court should reverse and remand to the district court. Thank you. Thank you, Ms. Cruz. And we appreciate your willingness to accept the court's request to the court as well as your client. Thank you very much. The case is taken under advisement.